IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

TERRY WHITE,

                              Plaintiff,

                v.

NYLIFE SECURITIES, LLC,

                              Defendant.

Case No. 3:21-cv-00012-TMB

**ORDER ON DEFENDANT'S MOTION
TO DISMISS (DKT. 8)**

## I.    INTRODUCTION

The matter comes before the Court on Defendant NYLIFE Securities, LLC's ("NYLIFE")

Motion to Dismiss (the "Motion").[1]  NYLIFE seeks to dismiss the Second Cause of Action pleaded

in the Complaint[2] ("Count 2") under the Alaska Unfair Trade Practices Act ("UTPA").[3]  Plaintiff

Terry White opposes the Motion.[4]  The Motion is fully briefed by the Parties,[5] and the Court

concludes oral argument is not necessary for resolution of the matter.  For the reasons stated below,

NYLIFE's Motion is **DENIED**.

---

[1] Dkt. 8 (Motion).

[2] Dkt. 7-1 (Complaint).

[3] Dkt. 8 at 1; Alaska Stat. Ann. ("AS") § 45.50.471 *et seq.*

[4] Dkt. 9 (Opposition).

[5] Dkts. 8; 9; 10 (Reply).

Case 3:21-cv-00012-TMB   Document 11   Filed 08/02/21   Page 1 of 24

## II.  BACKGROUND

White filed his Complaint in Alaska state court on December 28, 2020.[6]  NYLIFE subsequently removed the action to federal court under diversity jurisdiction on January 26, 2021.[7] The Complaint arises out of allegations that Ronald "Buddy" Bailey Jr. ("Bailey"), an employee of NYLIFE, gave fraudulent investment advice to White and that White paid $588,000 in exchange for an ownership stake in a seafood processing company that is now worthless.[8]  NYLIFE is a Delaware limited liability company headquartered in New York state, a registered broker-dealer, and a wholly-owned subsidiary of the New York Life Insurance Company.[9]  White, a resident of Anchorage, Alaska, is a customer of NYLIFE.[10]

### A.  Complaint for Damages

In his Complaint for damages, White alleges that in or around May 2009, he purchased a life insurance policy from NYLIFE and that he continues to pay the premiums for the policy to the present day.[11]  White states that since purchasing his life insurance policy in May 2009 he has been in a fiduciary relationship with NYLIFE.[12]

---

[6] Dkt. 7-1.

[7] Dkt. 1 (Notice of Removal).

[8] Dkt. 7-1 at ¶¶ 17, 25, 30, 34.

[9] Dkts. 8 at 1; 1 at 2.

[10] Dkt. 7-1 at ¶¶ 1, 6–7.

[11] *Id.* at ¶¶ 6–7.

[12] *Id.* at ¶ 9.

2

In or before 2017, White alleges that NYLIFE assigned Bailey to service White's life insurance policy and other business with NYLIFE.[13] White states that in or around 2017, Bailey invited White to a meeting at NYLIFE's Anchorage Office to discuss investment opportunities, which White attended.[14] At the meeting, Bailey "discussed several investment options[,]" including "an ownership interest in an Alaska limited liability company that performed seafood processing."[15] White states that "[t]he ownership interest turned out to be a 9.04% ownership of Golden Empire Seafoods, LLC [("Golden Empire")] . . . in exchange for [White's] principal payment of $588,000."[16] White alleges that Golden Empire "owned an approximate 44.25% share in another company, Golden Harvest Alaska Seafood, LLC ('Golden Harvest'), the ownership structure of which was not disclosed to Plaintiff."[17] At the 2017 meeting, White alleges that Bailey promised him "a minimum of four to six percent return on his investment principal in Golden Empire and an annual dividend of at least ten percent from Golden Empire."[18] White alleges that "neither Bailey nor [NYLIFE] provided [White with] a private placement memorandum about Golden Empire, Golden Harvest, or any other investment opportunity."[19] White similarly alleges that neither NYLIFE nor Bailey provided White with financial statements for either company.[20]

---

[13] *Id.* at ¶ 10.

[14] *Id.* at ¶ 14.

[15] *Id.* at ¶ 17.

[16] *Id.*

[17] *Id.* at ¶ 18.

[18] *Id.* at ¶ 19.

[19] *Id.* at ¶ 20.

[20] *Id.* at ¶ 22.

In reliance on NYLIFE and Bailey, White purchased his 9.04% stake in Golden Empire, which was finalized on or around December 31, 2017.[21]

In approximately August 2019, White alleges he "became aware of the omissions set forth [in the Complaint]."[22] Specifically, White states he learned that Bailey "held an ownership interest in Golden Harvest, a fact fraudulently omitted by Bailey and [NYLIFE]."[23] White alleges that Bailey was promised an "additional ownership interest in Golden Harvest in exchange for obtaining the funds spent by [White] . . . a fact fraudulently omitted by Bailey and [NYLIFE]."[24] Finally, White asserts that his investment in Golden Empire has no value and that Golden Empire is defunct.[25]

White brings four causes of action: Violation of Alaska Securities Act (the "Securities Act") under Alaska Stat. Ann. ("AS") § 45.56.100, *et seq.* (Count 1); Violation of the UTPA (Count 2); Intentional Misrepresentation (Count 3); and Breach of Fiduciary Duty (Count 4).[26] White seeks the following damages: (1) actual monetary damages of $588,000; (2) additional monetary losses incurred by White to be proven at trial; (3) treble actual monetary damages as permitted under the UTPA[27]; (4) punitive damages as the Court deems necessary and proper[28]; (5)

---

[21] *Id.* at ¶¶ 25–26.

[22] *Id.* at ¶ 32.

[23] *Id.* at ¶ 28.

[24] *Id.* at ¶ 29.

[25] *Id.* at ¶ 34.

[26] *Id.* at ¶¶ 35–60.

[27] AS § 45.50.531(a).

[28] *Id.*

interest starting from the date White finalized purchase of the security[29]; and (6) attorney's fees and costs and other relief deemed proper.[30]

### B. Motion to Dismiss

NYLIFE moves to dismiss Count 2 of the Complaint.[31]  NYLIFE argues that Count 2 should be dismissed by the Court because "[d]eceptive or fraudulent conduct in securities transactions is regulated by Alaska securities law and exempt from the UTPA[.]"[32]  NYLIFE argues that under AS § 45.50.481(a)(1), "the UTPA does not apply to acts in trade or commerce 'regulated by a statute or regulation administered by the state, including a state regulatory board or commission, unless the statute or regulation does not prohibit the practices declared unlawful.'"[33]  The UTPA exemption applies where "'conduct is subject to ongoing careful regulation[,]'" which NYLIFE argues is the case here.[34]  NYLIFE argues that "[s]ecurities transactions are extensively regulated under state and federal law[,]" including the Securities Act and its corresponding regulations.[35]  For example, "Alaska law forbids any person from making false statements, omitting material facts, or otherwise engaging in any conduct to defraud or deceive a person in connection with a securities transaction."[36] NYLIFE argues that the Securities

---

[29] AS § 45.56.710.

[30] Dkt. 7-1 at 11.

[31] Dkt. 8.

[32] *Id.* at 1.

[33] *Id.* at 3.

[34] *Id.* (citing *Adkins v. Collens*, 444 P.3d 187, 195 (Alaska 2019)).

[35] *Id.*

[36] *Id.* (citing AS §§ 45.56.500 and 45.56.510).

Act provides a private cause of action and gives the state "civil and criminal authority to enforce Alaska securities laws, which it exercises."[37]

NYLIFE also cites interpretations of other states' consumer protection acts to argue that "[i]t is uncontroversial that securities are a specialized area of regulation outside the scope of general consumer protection acts nationwide."[38] NYLIFE suggests that the Alaska legislature would not have intended the UTPA to reach securities transactions, in light of the regulatory scheme governed by the Securities Act.[39]

### C. White's Opposition

White opposes the Motion, arguing that NYLIFE asks the Court "to generate new law in Alaska that recognizes an exemption of securities-related claims from the UTPA's purview[.]"[40] First, White argues that NYLIFE has not satisfied the two-pronged test required to exempt securities transactions under the Securities Act.[41] White argues that NYLIFE must show that (1) the business is regulated elsewhere, and (2) the unfair acts and practices are prohibited therein.[42] White argues that "generalized recitation of securities regulation" is not enough to meet the "high burden of demonstrating an ongoing regulatory framework[.]"[43] White further states that the Alaska Supreme Court interprets § 481(1) of the UTPA to exempt "only those acts or

---

[37] *Id.*

[38] *Id.* at 4 (citing New Hampshire, Hawaii, Massachusetts, and North Carolina law).

[39] *Id.*

[40] Dkt. 9 at 3.

[41] *Id.* at 4.

[42] *Id.* at 4–5 (citing *State v. O'Neill Investigations*, 609 P.2d 520, 528 (Alaska 1980)).

[43] *Id.* at 5.

transactions which are the subject of 'ongoing, careful regulation.'"[44]  White argues that NYLIFE has not met its burden to show how "the transaction at issue here is subject to the type of '[ongoing, careful] regulation' to an extent sufficient to enjoy exemption under the UTPA."[45]  White further argues that the UTPA is broader in scope and that the lines between the UTPA and Alaska Securities Act are not clear.[46]

Second, White argues that the out-of-state law cited by NYLIFE is distinguishable and actually supports White's position.[47]  He argues that after Massachusetts courts found securities transactions exempt, the legislature amended the law to expressly include securities transactions.[48] In New Hampshire, the consumer protection law explicitly excludes securities transactions.[49]  In North Carolina, the state supreme court adopted an interpretation of the consumer protection law that exempted securities transactions subject to overlapping regulation, but, White argues, the Alaska Supreme Court in *Matanuska Maid* rejected this interpretation of the UTPA.[50]  White argues that NYLIFE's discussion of Hawaii law is subject to the same critique and that the Ninth Circuit would not treat Alaska law in a similar manner.[51]

---

[44] *Id.* (quoting *Matanuska Maid v. State*, 620 P.2d 182, 186 (Alaska 1980)).

[45] *Id.* at 6.

[46] *Id.* at 6–7 ("It is possible the trier of fact in the case at bar may ultimately decide some of the acts and omissions alleged in [White's] [C]omplaint do not create liability under the Securities Act but are nonetheless unfair business practices for which [NYLIFE] is liable under the UTPA.").

[47] *Id.* at 8.

[48] *Id.* at 9.

[49] *Id.* at 9–10.

[50] *Id.* at 10.

[51] *Id.* at 11–12.

*D.  NYLIFE's Reply*

NYLIFE filed a Reply reiterating its arguments in favor of an exemption.  It argues that *Matanuska Maid* is distinguishable on its facts, since *Matanuska Maid* concerned a state action, not a "post-complaint, private civil proceeding[]."[52]  It further argues that the Securities Act regulatory scheme is more than mere prohibition—it imposes a number of requirements and the Alaska Division of Banking and Securities "engages in enforcement activities[.]"[53]  As to the discussion about out-of-state authority, NYLIFE argues that "exempting Alaska securities and investments from [the] Alaska UTPA is a reasonable policy choice by the legislature" and that the exemption written by the legislature should apply on its face.[54]  NYLIFE states that while Alaska does not apply the "'overlapping enforcement schemes'" approach of North Carolina or Hawaii, the text of the exemption is consistent with the logic imbued in the relevant North Carolina and Hawaii case law.[55]

## III.    LEGAL STANDARD

*A.  Federal Rule of Civil Procedure 12(b)(6)*

NYLIFE moves under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss Count 2 of the Complaint for failure to state a claim upon which relief can be granted.[56]  In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "a short and plain

---

[52] Dkt. 10 at 2.

[53] *Id.* at 3–4.

[54] *Id.* at 5.

[55] *Id.*

[56] Dkt. 8.

statement of the claim showing that the pleader is entitled to relief,"[57] and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[58] In ruling on a 12(b)(6) motion, the Court must "'accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party.'"[59]

In determining whether a complaint pleads sufficient facts to cross "the line between possibility and plausibility," "[t]hreadbare recitals of the elements of a cause of action" and "conclusory statements" do not suffice.[60] However, a plaintiff need not plead "all facts necessary to carry" his or her burden.[61] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[62] So long as plaintiffs meet this standard of plausibility, their claim survives a 12(b)(6) motion even if defendants present a similarly plausible description of the disputed events.[63] "'A dismissal for failure to state a claim is proper only if it appears beyond

---

[57] Fed. R. Civ. P. 8(a)(2).

[58] *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

[59] *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001) (quoting *Nat'l Ass'n for the Advance. of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000)).

[60] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

[61] *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), *rev'd on other grounds* 563 U.S. 713 (2011).

[62] *Iqbal*, 556 U.S. at 679 (citation omitted).

[63] *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011).

9

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[64]

Generally, the court should not consider materials outside of the pleadings when ruling on a motion to dismiss for failure to state a claim.[65] Courts may consider additional materials where the complaint "necessarily relies" on those documents and their authenticity is not disputed.[66]

### B. UTPA and UTPA Exemption

The UTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce[.]"[67] To establish "a prima facie case of unfair or deceptive acts or practices under the UTPA[,]" a plaintiff must prove two elements: "(1) that the defendant is engaged in trade or commerce; and (2) that in the conduct of trade or commerce, an unfair act or practice has occurred."[68] The UTPA is a "remedial statute [and] its language should be liberally construed."[69]

AS § 45.50.481(a)(1) exempts from UTPA "an act or transaction regulated by a statute or regulation administered by the state, including a state regulatory board or commission, unless the statute or regulation does not prohibit the practices declared unlawful in AS [§] 45.50.471[.]" The Alaska Supreme Court has interpreted the exemption to apply "only where the business is both

---

[64] *Arpin*, 261 F.3d at 923 (quoting *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994)).

[65] *Id.* at 925 (citing *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)).

[66] *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (citations omitted).

[67] AS § 45.50.471(a).

[68] *Merdes & Merdes, P.C. v. Leisnoi, Inc.*, 410 P.3d 398, 410 (Alaska 2017) (citation and internal quotation marks omitted).

[69] *Id.* at 411.

regulated elsewhere and the unfair acts and practices are therein prohibited."[70]  "To qualify for the statutory exemption, [the defendant] must show both that its conduct is subject to *ongoing, careful regulation* and that such regulation prohibits the conduct [alleged] as violating the UTPA."[71]  For the exemption to apply, the applicable regulations must "prohibit the *specific* conduct at issue."[72] "[T]he party asserting the exemption bears the burden of proof."[73]  Further, the UTPA states that "[i]n interpreting AS [§] 45.50.471 due consideration and great weight should be given the interpretations of 15 U.S.C. 45(a)(1) ([Section] 5(a)(1) of the Federal Trade Commission Act)."[74]

The Court is bound to follow the Alaska Supreme Court's interpretation of the UTPA.[75] "When the highest court of a state has not directly spoken on a matter of state law, a federal court sitting in diversity must generally use its 'own best judgment in predicting how the state's highest court would decide the case.'"[76]  "An intermediate state appellate court decision is a 'datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'"[77]

---

[70] *O'Neill*, 609 P.2d at 528.

[71] *Adkins*, 444 P.3d at 195 (emphasis added).

[72] *Id.* at 196 (emphasis added).

[73] *Collens v. Adkins*, No. 3AN-14-05961 CI, 2017 WL 7805379, at *2 (Alaska Super. Ct. Dec. 8, 2017), *aff'd in part*, *Adkins*, 444 P.3d at 197.  The Superior Court in *Adkins* framed the UTPA exemption as "an affirmative defense for which the party asserting the exemption bears the burden of proof."  *Id.*

[74] AS § 45.50.545.

[75] *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

[76] *Fast Trak Invest. Co., LLC v. Sax*, 962 F.3d 455, 465 (9th Cir. 2020) (quoting *Fiorito Bros., Inc. v. Fruehauf Corp.*, 747 F.2d 1309, 1314 (9th Cir. 1984)).

[77] *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982) (citation omitted).

*C. Alaska Securities Act*

White, in addition to his UTPA claim, brings a claim under the Securities Act.   The Securities Act states:

> A person may not, in connection with the offer, sale, or purchase of a security, directly or indirectly,
>
> (1) employ a device, scheme, or artifice to defraud;
>
> (2) make an untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (3) engage in an act, practice, or course of business that operates or would operate as a fraud or deceit on another person.[78]

The state may prosecute certain violations of the Securities Act civilly or criminally, and private plaintiffs may seek redress under the statute for harms caused by broker-dealers and investment advisors.[79]   Specifically, private plaintiffs may sue a person who "sells a security . . . by means of an untrue statement of a material fact or an omission to state a material fact necessary to make the statement made[.]"[80]

## IV.   DISCUSSION

The Court finds that White's Complaint "contain[s] sufficient factual matter, [which] accepted as true, [] 'state[s] a claim to relief that is plausible on its face.'"[81]   White has plausibly alleged a violation of the UTPA.  NYLIFE has not demonstrated that White can "prove no set of

---

[78] AS § 45.56.500.

[79] *See* AS §§ 45.56.700, 45.56.730, 45.56.710.

[80] AS § 45.56.710(b).

[81] *Iqbal*, 556 U.S. at 677–78 (internal citation omitted).

facts in support of his claim which would entitle him to relief.'"[82]  Accordingly, NYLIFE's Motion to Dismiss pursuant to Rule 12(b)(6) is **DENIED.**

### A.  Whether Alleged Conduct is Subject to "Ongoing, Careful Regulation"

The principal dispute before the Court is whether the alleged conduct in the Complaint is exempted by AS § 45.50.481(a)(1).  The Parties do not dispute that, but for the exemption, White has adequately pleaded his claim under the UTPA.[83]  Neither the Alaska Supreme Court nor any other Alaska state court has held that securities transactions are categorically exempt from the UTPA under AS § 45.50.481(a)(1).  The Court therefore must "use its 'own best judgment in predicting how the state's highest court would decide the case.'"[84]  In interpreting the exemption under AS § 45.50.481(a)(1), the Alaska Supreme Court would apply the test established in *O'Neill* and refined in *Matanuska Maid*, which asks (1) whether the alleged conduct is subject to "ongoing, careful regulation," and (2) whether the specific alleged unfair acts and practices are prohibited elsewhere.[85]

The Court must first determine the scope of alleged conduct for which White seeks redress through his UTPA claim against NYLIFE.  White alleges that his relationship with NYLIFE began no later than May 2009, when he purchased a life insurance policy.[86]  Bailey, a NYLIFE employee,

---

[82] *Arpin*, 261 F.3d at 923 (quoting *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994)).

[83] White has adequately pleaded "(1) that the defendant is engaged in trade or commerce; and (2) that in the conduct of trade or commerce, an unfair act or practice has occurred."  *See Merdes & Merdes*, 410 P.3d at 410–11.

[84] *See Fast Trak Invest. Co., LLC*, 962 F.3d at 465 (quoting *Fiorito Bros.*, 747 F.2d at 1314).

[85] *See O'Neill*, 609 P.2d at 520; *Matanuska Maid*, 620 P.2d at 186.

[86] Dkt. 7-1 at ¶ 6.

was assigned to service White's insurance policy and White's other business dealings with NYLIFE, and as part of that relationship corresponded with White via email and telephone.[87]  In 2017, Bailey invited White to a meeting to discuss investment opportunities.[88]  At the meeting, based on the encouragement and advice of Bailey, White purchased a 9.04% ownership interest in Golden Empire in exchange for $588,000.[89]  Bailey made certain representations to White about the return and dividends White could expect on his investment.[90]  Bailey purportedly failed to provide White with financial statements or private placement memoranda for Golden Empire or Golden Harvest, a company partially owned by Golden Empire.[91]  White also alleges that Bailey was promised remuneration from managing members or principals of Golden Empire in exchange for obtaining White's investment, of which White was not aware.[92]  White asserts that his investment is now worthless.[93]

At its core, the allegations in this case appear to amount to classic securities fraud: White alleges that he had a relationship with NYLIFE and its employee Bailey, Bailey fraudulently induced White to invest $588,000 in Golden Empire, and White lost his entire investment when Golden Empire became defunct.  The securities transaction alleged in the Complaint is the genesis for this case and the White's causes of action.  Considering this, the question before the Court is

---

[87] *Id.* at ¶¶ 10, 13.

[88] *Id.* at ¶ 14.

[89] *Id.* at ¶ 17.

[90] *Id.* at ¶ 19.

[91] *Id.* at ¶¶ 18, 20, 22.

[92] *Id.* at ¶ 29.

[93] *Id.* at ¶ 34.

whether the securities transaction and the conduct surrounding it are subject to "ongoing, careful regulation."

It is undisputed by the Parties that securities are regulated by both state and federal governments.[94] NYLIFE argues that the state and federal regulatory frameworks are sufficient for the Court to find that the alleged conduct is subject to "ongoing, careful regulation."[95] NYLIFE notes that Alaska law prohibits "any person from making false statements, omitting material facts, or otherwise engaging in any conduct to defraud or deceive a person in connection with a securities transaction."[96] It notes that the state possesses "civil and criminal authority to enforce Alaska securities laws, which it exercises" and that the Securities Act provides a cause of action for people who are alleged victims of securities fraud, like White.[97] On the federal level, NYLIFE argues that Alaska law "requir[es] that securities sold in Alaska generally conform to federal securities registration requirements" and that federal law "prohibits fraudulent conduct by investment advisors and brokers."[98] It also points out the "robust enforcement arm" of the Securities and Exchange Commission ("SEC").[99]

White disagrees, arguing that NYLIFE provided only a "very generalized recitation of securities regulations and enforcement articulated in Defendant's Motion to Dismiss."[100] White

---

[94] *See* Dkts. 8 at 3; 9 at 6.

[95] Dkt. 8 at 3–4.

[96] *Id.* at 3.

[97] *Id.* at 3–4.

[98] *Id.* at 4 (citing 18 U.S.C. § 1348;15 U.S.C. § 80b-6).

[99] *Id.*

[100] Dkt. 9 at 5.

emphasizes the Alaska Supreme Court's narrow interpretation of the UTPA exemption, namely, that "[r]egulation is . . . clearly distinct from and involves something more than mere prohibition."[101] If the exemption applied to any prohibitory law, it "would be overly restrictive and frustrate the intent of the legislature."[102]

The Court, based on the record before it, does not have a sufficient basis to conclude that the Alaska Supreme Court would find the conduct alleged is subject to "ongoing, careful regulation." Rule 12 and Alaska law puts the burden on NYLIFE to show that the exemption applies, and NYLIFE has not carried its burden.

First, it appears that the Securities Act has been seldom used by the state or individual plaintiffs to seek redress in factually similar securities cases. NYLIFE argues that the "state possesses civil and criminal authority to enforce Alaska securities laws, which it exercises."[103] In a footnote, NYLIFE directs the Court to the recent enforcement orders issued by the State of Alaska Department of Commerce, Community, and Economic Development, Division of Banking and Services.[104] Since 2016, the Division has published approximately 90 enforcement orders, with 40 of them categorized as relating to securities.[105] The pace of enforcement as measured by the number of published orders has dropped substantially since 2018.[106] NYLIFE has not cited

---

[101] *Id.*; *see Matanuska Maid*, 620 P.2d at 186.

[102] *See Matanuska Maid*, 620 P.2d at 186.

[103] Dkt. 8 at 3.

[104] *Id.* at 3 n.1.

[105] *See* Enforcement Orders, State of Alaska, Department of Commerce, Community, and Economic Development, Division of Banking and Securities, https://www.commerce.alaska.gov/web/dbs/enforcementorders.aspx (last visited July 21, 2021).

[106] *Id.*

any enforcement orders that demonstrate the state enforces its securities laws in factually analogous circumstances. The lone securities enforcement order published in 2021 concerns certain filing requirements and the Alaska Native Claims Settlement Act ("ANCSA") Proxy Solicitation and Stock Act.[107] Other recent orders similarly concern the ANCSA, corporate governance, or state registration requirements.[108]

Only two recent enforcement orders, No. 19-133-S (the "Metals.com Order") and No. 16-67-S (the "Codawn Order"), appear somewhat analogous.[109] The Metals.com Order concerned actions taken by Metals.com to induce seven Alaskan investors to invest nearly $1.5 million in precious metals.[110] Metals.com defrauded the investors by misrepresenting the nature of the investment and omitting material facts.[111] It used "scare and high-pressure tactics to induce Alaska

---

[107] *In the Matter of Darrell Toby Brown*, Order Voiding Proxies and Consent to Order, Order No. 21-60-S (June 16, 2021), https://www.commerce.alaska.gov/web/portals/3/pub/Order%20No.%2021-60-S%20(Redacted).pdf.

[108] *See generally* Enforcement Orders, State of Alaska, Department of Commerce, Community, and Economic Development, Division of Banking and Securities, https://www.commerce.alaska.gov/web/dbs/enforcementorders.aspx (last visited July 21, 2021).

[109] *See In the Matter of TMTE, Inc., aka Metals.com et al.*, Temporary Cease and Desist Order Effective Immediately, Assessing Civil Penalties, and Notice of Final Order, Order No. 19-133-S (July 20, 2020), https://www.commerce.alaska.gov/web/portals/3/pub/Order%20No.%2019-133-S.pdf; *In the Matter of Codawn Consulting Corp. et al.*, Temporary Cease and Desist Order Effective Immediately, Assessing Civil Penalties, With Notice of hearing Rights, and Notice of Final Cease and Desist Order, Order No. 16-67-S (Feb. 8, 2017), https://www.commerce.alaska.gov/web/Portals/3/pub/enforcementactions/16-67-S_CodawnConsultingCorp..pdf?ver=2017-02-10-113045-693.

[110] *See In the Matter of TMTE, Inc., aka Metals.com et al.*, Temporary Cease and Desist Order Effective Immediately, Assessing Civil Penalties and Notice of Final Order, Order No. 19-133-S (July 20, 2020), https://www.commerce.alaska.gov/web/portals/3/pub/Order%20No.%2019-133-S.pdf.

[111] *Id.* at 11.

Investors to liquidate their securities holdings and to instead invest in precious metals.[]"[112] Metals.com was ordered to pay a civil penalty of $700,000 and restitution to the investors.[113] Similarly, the Codawn Order concerned a solicitation by respondents about investments in potential oil and gas ventures primarily in the gulf coast region of the United States.[114] An Alaska investor sent $160,000 to respondents, but there was no evidence that the money was put towards the oil and gas ventures.[115] The investor did not receive any return on his investments and did not receive any of his investment principal back.[116] Respondents were ordered to pay a $125,000 civil penalty.[117]

While these enforcement actions illustrate that is certainly possible for the state to prosecute NYLIFE and Bailey based on the alleged harm suffered by White, it is unclear at this stage of the litigation, based on the record before the Court, that the conduct alleged is subject to "ongoing, careful regulation" such that White should be unable to bring a claim under the UTPA.

Second, when the Alaska Supreme Court has addressed the UTPA and UTPA exemption, it has undertaken a thorough review of the applicable regulatory schemes to test their sufficiency. In *Alaska Interstate Const., LLC v. Pacific Diversified Investments, Inc.*, the Alaska Supreme Court

---

[112] *Id.*

[113] *Id.* at 14.

[114] *In the Matter of Codawn Consulting Corp. et al.*, Temporary Cease and Desist Order Effective Immediately, Assessing Civil Penalties, With Notice of hearing Rights, and Notice of Final Cease and Desist Order, Order No. 16-67-S (Feb. 8, 2017), https://www.commerce.alaska.gov/web/Portals/3/pub/enforcementactions/16-67-S_CodawnConsultingCorp..pdf?ver=2017-02-10-113045-693.

[115] *Id.* at 3.

[116] *Id.*

[117] *Id.* at 4.

reversed the lower court's ruling that a plaintiff's UTPA claims were exempt because the conduct "alleged in relation to [plaintiff's] aircraft leases was regulated by other laws."[118]  The Alaska Supreme Court noted that the lower court "cited the [Federal Aviation Administration ("FAA")] and FARs [Federal Airline Regulations] generally" and explained that "[t]he FAA is primarily concerned with aviation safety, not redressing claims of fraudulent billing and conversion" and the "only specific regulation identified" by appellees did "not address the acts or transactions underlying [appellant's] UTPA claims[.]"[119]  Similarly, in *Matanuska Maid*, the Alaska Supreme Court considered the interaction of Alaska Restraint of Trade Act and the UTPA, finding that the UTPA exemption does not apply to acts proscribed by the Alaska Restraint of Trade Act.[120]  It erred on the side of permitting overlapping avenues for redress at the pre-complaint stage.[121]  And in *Merdes & Merdes, P.C. v. Leisnoi, Inc*, the Alaska Supreme Court reaffirmed its position that the Rules of Professional Conduct governing members of the Alaska Bar are "not the type of ongoing, careful regulation required to trigger an exemption" under the UTPA.[122]  Although small,

---

[118] 279 P.3d 1156, 1167 (Alaska 2012).

[119] *Id.*

[120] *Matanuska Maid*, 620 P.2d at 185–86.

[121] *Id.* at 185 ("Since the bidding and pricing activities under investigation in this case could conceivably lack some essential element of an AS § 45.50.010 violation (Alaska's equivalent of the Sherman Act), it is appropriate for the State to investigate as well the possible violation of AS § 45.50.471 (Alaska's equivalent of the Federal Trade Commission Act). The State cannot be expected to know with certainty the exact nature of a suspected violation. Indeed, uncertainty is the very reason for conferring pre[-]complaint investigatory authority on the Attorney General.").  The trial court in *Adkins* stated "to the extent that liability under the UTPA can coexist with a separate regulatory scheme without frustrating the intent of this separate regulatory scheme, exemption generally will not be found."  *Adkins*, No. 3AN-14-05961 CI, 2017 WL 7805379, at *2.

[122] *Merdes & Merdes*, 410 P.3d at 413.

the body of UTPA cases decided by the Alaska Supreme Court makes clear that courts should undertake a rigorous review of the applicable regulatory schemes and that mere citation to a broad regulatory scheme is insufficient to support dismissal of a UTPA claim.

Additionally, the Court reviewed the record in *Alaska v. Janssen Ortho LLC*, in which the State of Alaska argued that the UTPA should apply to allegations of "unlawful off-label marketing" of certain prescription medicines approved by the U.S. Food and Drug Administration ("FDA").[123] The State argued that the federal regulatory scheme lacked "any real teeth to curb the false and misleading marketing and promotional activities of Defendants" and therefore the conduct was not subject to "ongoing, careful regulation" and exempt under the UTPA.[124] The case settled before the Alaska Supreme Court could weigh in on the question of whether the UTPA exemption applies "where activity is regulated elsewhere, but the regulation is arguably ineffective."[125]

The *Janssen* case is instructive because it demonstrates that without a finding that the alleged conduct is subject to "ongoing, careful regulation," the UTPA exemption cannot apply.[126] In *Janssen*, the district court did not find the FDA regulatory and enforcement scheme dispositive as to whether the prescription medicine regulated by the FDA was subject to adequate regulation.[127] Here, NYLIFE's lack of analysis as to state enforcement of the Securities Act,

---

[123] *Alaska v. Janssen Ortho LLC*, No. 3:11-cv-0002-RRB, 2012 WL 13034376, at *1 (D. Alaska March 30, 2012) (order certifying a question to the Alaska Supreme Court).

[124] *Id.* at *1–2 (internal quotation marks omitted).

[125] *Id.* at *3; *see Alaska v. Janssen Ortho LLC*, No. 3:11-cv-0002-RRB, Order Regarding Notice of Settlement and Withdrawing Certification Order (Docket 130) (Sept. 13, 2013).

[126] *See Matanuska Maid*, 620 P.2d at 186.

[127] *See Janssen Ortho LLC*, No. 3:11-cv-0002-RRB, 2012 WL 13034376, at *1.

combined with NYLIFE's mere passing gesture to the SEC and federal securities laws is not sufficient for NYLIFE to carry its burden on its motion to dismiss.

Third, although NYLIFE cites AS § 45.56.710 for the proposition that White may bring a case under the Securities Act, NYLIFE has not cited any authority showing how courts interpret the Securities Act and whether or how the facts alleged would create liability under the Securities Act. This is problematic because NYLIFE argues that the Securities Act prohibits the conduct alleged in the Complaint and therefore it is duplicative with the UTPA and exemption should apply.[128] White persuasively argues that it is not clear whether all of the facts alleged would create liability under the Securities Act, which is why, at the motion to dismiss stage, his UTPA claim should be allowed to proceed. The Court agrees.

Finally, the Court notes that NYLIFE is correct in its analysis that most jurisdictions that have considered whether securities transactions are exempt from state consumer protection acts have found that they are indeed exempt.[129] Notably, securities transactions are exempt from the Washington Unfair Trade Practices Act.[130] The Alaska Supreme Court in *Matanuska Maid* looked

---

[128] *See* Dkt. 8 at 3.

[129] *See, e.g.*, *Shearson Lehman Bros. Inc. v. Greenberg*, 60 F.3d 834, at *2 n.1 (9th Cir. July 3, 1995) (mem. op.) ("At least 16 other jurisdictions which have considered whether investment securities are within the scope of their consumer protection statutes have come to a similar conclusion, holding that claims based upon securities violations are not within the ambit of the statutes." (citations omitted)); *United Heritage Life Ins. Co. v. First Matrix Inv. Servs. Corp.*, No. CV 06–0496–S–MHW, 2009 WL 3229374, at *9 (D. Idaho Sept. 30, 2009) ("Jurisdictions that contain a directive to look at the [Federal Trade Commission Act] and its interpretation have held that their consumer protection acts do not cover securities transactions."); 12A Blue Sky Law, § 9:86, Consumer Protection Acts (June 2021) ("[A] majority of states refuse to apply their consumer-protection laws to the securities field, although, there are a few notable exceptions.").

[130] *See Kittilson v. Ford*, 595 P.2d 944, 948 (Wash. Ct. App. 1979), *aff'd*, 608 P.2d 264 (Wash. 1980); *Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162,166 (4th Cir. 1985) (noting that Washington—along with Rhode Island and South Carolina—have held that its Unfair Trade Practices Act has no application to securities transactions); *see also Seattle-First Nat. Bank v. Crystal & Gold, Ltd.*, 85 Wash. App. 1084, 1997 WL 206788, at *6 (Wash. Ct. App. 1997) (noting

to interpretation of the Washington Consumer Protection Act by the Supreme Court of Washington as persuasive authority when interpreting Alaska's UTPA, which contains similar provisions.[131] To the extent the Alaska courts would look to Washington's analysis as persuasive authority, this weighs in favor of NYLIFE's position. However, Washington's decision to exempt securities transactions is not dispositive here.

Because NYLIFE has not met the first prong of the test established by the Alaska Supreme Court, the Motion is **DENIED**.

### B. Whether Alleged Conduct is Specifically Prohibited

The Court will next turn to whether the alleged conduct is specifically prohibited by state and federal law. The Court concludes that NYLIFE has not carried its burden to show that "the specific conduct would, *in fact*, be prohibited under those regulations."[132]

NYLIFE characterizes White's case narrowly, as a securities fraud case, focused on the $588,000 loss suffered by White because of Bailey's alleged conduct.[133] NYLIFE argues that the Securities Act prohibits the alleged conduct and that White's UTPA claim is predicated on one transaction—which was White's purchase of his interest in Golden Empire.[134] On the other hand, White argues that the Securities Act is narrower than the UTPA and that the facts alleged in the Complaint may be "unfair business practices[,]" but still not create liability under the Securities

---

that the "Comptroller of Currency enforces federal regulations to resolve questions of unfair and deceptive practices by national banks" and that "[t]his pervasive regulatory scheme preempts state jurisdiction over a guarantor's claim that a bank unfairly administered a loan." (citation omitted)).

[131] *Matanuska Maid*, 620 P.2d at 186.

[132] *Adkins*, No. 3AN-14-05961 CI, 2017 WL 7805379, at *2 (emphasis in original).

[133] Dkt. 8 at 1–5.

[134] *Id.* at 4–6.

Act.[135]  Alaska courts have not interpreted the UTPA exemption in this context, so there is limited ability for White or NYLIFE to say with certainty whether certain facts would create liability under the UTPA, the Securities Act, or both.[136]

The facts alleged in the Complaint appear to arise almost exclusively from White's meeting with Bailey and losses incurred as a result of White's failed $588,000 investment in Golden Empire.  In part because of the lack of state authority, White has not identified any specific facts alleged in the Complaint that would fall exclusively under UTPA instead of both the UTPA and Securities Act concurrently.[137]  With no authority ruling out causes of action under both the UTPA and Securities Act, the Court will not categorically bar White from bringing a claim under the UTPA.  NYLIFE has also not otherwise carried its burden, through citation to relevant authority, to demonstrate that the specific conduct alleged would "in fact" be prohibited.[138]

Finally, the Alaska Supreme Court cases addressing the UTPA exemption make clear that the Court should undertake a close review of the facts before applying the UTPA exception, which is best done with the benefit of discovery.[139]  The Court's conclusion is buttressed by the fact that

---

[135] Dkt. 9 at 6–7.

[136] *See id.* at 7.

[137] *See* Dkt. 9 at 6 ("[T]he *possibility* exists that alleged facts might not qualify as antitrust violations…[i]t is *possible* the trier of fact in the case at bar may ultimately decide some of the acts and omissions alleged . . . do not create liability under the Securities Act[.]" (emphasis added)).

[138] *Adkins*, No. 3AN-14-05961 CI, 2017 WL 7805379, at *2 (emphasis removed).

[139] *See Smallwood v. Central Peninsula Gen. Hosp.*, 151 P.3d 319, 329 (Alaska 2006) (noting that the state and federal regulations do not "govern[] the *form* of the provider billing statement or prohibit[] [certain] billing practices" and thus the specific unfair acts alleged are not prohibited by those regulations and the UTPA claim can proceed); *Adkins*, 444 P.3d at 196 (finding that the exemption provision's second prong was not established because appellant did not show that the

the UTPA has been characterized as a broad remedial statute and the exemption should be narrowly construed.[140]  Accordingly, NYLIFE's Motion pursuant to Rule 12(b)(6) is **DENIED**.

## V.    CONCLUSION

The Court's ruling on this Motion is narrow.  Based on the specific facts alleged and arguments made by the Parties, the Court cannot conclude that the alleged conduct is exempt from the UTPA.  Accordingly, for the forgoing reasons, NYLIFE's Motion at Docket 8 is **DENIED**.  Pursuant to Rule 12(a)(4)(A), NYLIFE shall file its Answer to White's Complaint within fourteen days of this Order's issuance.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 2nd day of August, 2021.

/s/  *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

regulations prohibited the "specific conduct at issue").  Because of the law's ambiguity, discovery will allow the Court to better understand the "specific conduct" that gives rise to this case.

[140] *O'Neill*, 609 P.2d at 528; *Adkins*, No. 3AN-14-05961 CI, 2017 WL 7805379, at *2 ("The party asserting the exemption must prove that the *specific conduct* that is alleged to be unfair or deceptive is both regulated as a part of an ongoing, careful regulatory scheme, and that the specific conduct would, *in fact*, be prohibited under those regulations." (emphasis in original)).